IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS N. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-11-225-C |
| v. | ) | |
| | ) | |
| JUSTIN JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983. In his Complaint, Plaintiff alleges constitutional deprivations stemming from his confinement in the custody of the Oklahoma Department of Corrections ("DOC"). As Defendants, Plaintiff has named Mr. Jones, in his individual capacity and official capacity as the Director of DOC; Mr. Suttmiller, in his individual capacity and in his official capacity as DOC's Chief Medical Administrator; Ms. McCoy, in her individual capacity and in her official capacity as a Medical Services Administrator for DOC; Ms. Garza[1], in her individual capacity and in her official capacity as the Correctional Health Services Administrator ("CHSA") for Oklahoma State Reformatory ("OSR") where Plaintiff is confined; Ms. Carter, in her individual capacity and in her official capacity as a

---

[1]As of this date, Defendant Garza has not been served with process.

Medical Administrative Assistant at OSR; and Dr. Troutt, in his individual capacity and in his official capacity as a physician employed by DOC to provide medical treatment for DOC inmates. Defendants Jones, Suttmiller, McCoy, Carter, and Troutt have moved to dismiss the cause of action against them, or alternatively, for summary judgment (Docs. # 29, 54), and Plaintiff has responded to the motions. (Doc. # 51). Defendants Jones, Suttmiller, McCoy, and Carter have also caused the filing of a Special Report consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). (Doc. # 28). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that Defendants Jones, Suttmiller, McCoy, Carter, and Troutt's dispositive motions be granted.

I. Plaintiff's Claims

In Count One of the Complaint, Plaintiff alleges that the "Department of Corrections ("DOC") at the Oklahoma State Reformatory ("OSR")" was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's cruel and unusual punishment clause.[2] As support for this claim, Plaintiff contends that he has experienced persistent urinary and kidney problems beginning in 2004. Plaintiff alleges that in 2004 Dr. Steward, a now-deceased physician who provided treatment to prisoners at the Oklahoma State Penitentiary, diagnosed Plaintiff with a "kidney stone." Plaintiff alleges that in 2005 Dr. Steward prescribed antibiotic medication for an apparent urinary tract infection and that

---

[2]Plaintiff has not named DOC as a Defendant or effected service of process upon DOC in this action.

Plaintiff was transferred to OSR in November 2005.

In January 2006, Plaintiff alleges that he complained to "Dr. Thompson" at OSR of persistent problems with excessive urination for the previous two years.[3] According to Plaintiff's allegations, he was transported to the O.U. Medical Center ("OUMC") in September 2006 for evaluation by a urologist, and he was scheduled to return for follow-up appointment in 30 days, but he was not returned to the urologist until January 16, 2007, after he submitted a Request to Staff form to Defendant Garza and Defendant Troutt. Plaintiff contends that he was advised at the January 2007 appointment to return for follow-up treatment one month later and that he again submitted a Request to Staff form to Defendant Garza seeking to be transported for follow-up treatment with the specialist. Plaintiff alleges he was advised by Defendant Garza that he had been scheduled for surgery "soon." Complaint, at 7. Plaintiff alleges that "on 4.20.07 I saw the uriologist [sic] and was told my surgery would be on my urethra stricture [but] I did not return to O.U. Medical Center for surgery until 5.30.08, over a year from the time I was told about needing surgery." Complaint, at 11.

Plaintiff alleges that on May 1, 2007, a retrograde urethrogram procedure was conducted by a urologist at OUMC. He alleges that he "wrote" Defendant Garza to request to be scheduled for a follow-up appointment, and on July 18, 2007 she advised Plaintiff that his surgery would be rescheduled and she was "waiting on instructions from the specialist."

---

[3]Plaintiff has not named "Dr. Thompson" as a Defendant in this action.

<u>Id.</u> Plaintiff alleges that he underwent a surgical procedure at OUMC performed by a urologist on May 30, 2008, to repair a urethral stricture, and that on November 24, 2008, he was again transported for treatment by a urologist. He alleges the urologist performed a procedure identified only as a "cysto" and advised Plaintiff he needed another operation to repair a urethral stricture. Plaintiff states that another operation to repair his urethral stricture was performed on January 16, 2009, by a urologist at OUMC. Plaintiff alleges that he was returned to OUMC in February 2009 for removal of a catheter "and the Doctor told me at that time that I should be back to normal." <u>Id.</u> Plaintiff alleges that he was again advised he needed to return for follow-up treatment in one month, but he was not transported to the urologist for follow-up treatment until June 15, 2009. He alleges that on April 19, 2009, he "wrote" Defendant Garza to advise her that he had "the same pain" and was "not back to normal." Complaint, at 11. He alleges that when he was examined in June 2009 he was advised to return for follow-up treatment in thirty days, but he was not transported for another examination until October 2, 2009.

On October 2, 2009, Plaintiff asserts that he was again transported to OUMC for several procedures, which he describes only as "Cysto, U.D.S. and UroFlow." Plaintiff contends he advised unidentified "medical" staff on October 24, 2009, that he was in pain and his "kidneys [were] swelled up and hurting" although he was taking two prescribed medications. Complaint, at 12. Plaintiff contends that he was treated by Dr. Troutt. Plaintiff alleges he was again transported to OUMC for treatment by a urologist on December 20, 2010, and advised that his "urethrea [sic] stricture had to be removed." Plaintiff asserts that

this damage was caused by delays in transporting him to a urologist for treatment. Plaintiff asserts that "neither surgery helped to solve the problem" and that he now suffers from bladder problems causing him to have to wear medical shields and medical underwear, his "kidney [sic] hurts," and he urinates excessively during the daytime and nighttime, causing sleeping problems.

In Count Two, Plaintiff alleges that he exhausted administrative remedies that were available to him and that Defendants Garza and McCoy "intentionally impeded" his exhaustion of the grievance process.

In Count Three, Plaintiff contends that Defendant "Garza is not qualified to be the Correctional Health Service Administrator [for] OSR." Largely repeating the allegations made in Count One, Plaintiff alleges that Defendant Garza showed deliberate indifference to Plaintiff's serious medical needs. Complaint, at 6. In support of this claim, Plaintiff alleges that Defendant Garza "knew about the need for follow-up treatment" but repeatedly delayed scheduling Plaintiff for surgeries and follow-up appointments which resulted in the worsening of his physical condition.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). All well-pleaded facts, as distinguished from conclusory allegations, are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). To survive a motion to dismiss, a complaint must present factual allegations

that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558.

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted).[4] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

III. Official Capacity Claims

Plaintiff has alleged that Defendants are each liable to him in both their individual and official capacities. Defendants Jones, Suttmiller, McCoy, Carter, and Troutt move for dismissal of Plaintiff's claims against them in their official capacities pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that they are immune from such liability under the protection of the Eleventh Amendment.[5] See Ruiz v. McDonnell, 299 F.3d 1173, 1180-1181 (10th Cir. 2002)(Eleventh Amendment immunity defense is challenge to federal court's subject matter jurisdiction).

---

[4]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

[5]Defendant Troutt filed a separate Motion to Dismiss or in the alternative Motion for Summary Judgment. In his Motion, Defendant Troutt has adopted by reference the Motion to Dismiss or in the alternative Motion for Summary Judgment filed by Defendants Jones, Suttmiller, McCoy, and Carter. (Doc. # 54).

The Eleventh Amendment bars an action for money damages in federal court against a state by the citizens of that state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). This immunity extends to actions against a state agency, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and to state officials acting in their official capacities. Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 and n. 10 (1989). Accordingly, Defendants Jones, Suttmiller, McCoy, Carter, and Troutt are immune from Plaintiff's claims seeking monetary damages from them in their official capacities. See Eastwood v. Dep't of Corr. of State of Okl., 846 F.2d 627, 631 (10th Cir. 1988)("[T]he DOC is an arm of the state and should be entitled to [Eleventh Amendment] immunity."). Consequently, the Motions to Dismiss by Defendants Jones, Suttmiller, McCoy, Carter, and Troutt should be granted with respect to Plaintiff's official capacity claims.

IV. Personal Participation

In Count One and Count Three of the Complaint, Plaintiff asserts that Defendant Garza showed deliberate indifference to his serious medical needs. With respect to Defendant Troutt, Plaintiff alleges that he submitted a Request to Staff form to Dr. Troutt on January 2, 2007, in which Plaintiff complained that he was not rescheduled for a follow-up appointment in thirty days as ordered by his treating urologist at the O.U. Medical Center. Complaint, at 3. Plaintiff also states that he was medically treated by Dr. Troutt at some time

after October 24, 2009, when he alleges he "let medical know" he was experiencing pain. Complaint, at 8. With respect to Defendant McCoy, Plaintiff alleges only that Defendant McCoy had "given [him] the run-around two times" when he attempted to exhaust administrative remedies concerning Dr. Garza's alleged deliberate indifference to his medical needs.

Plaintiff has failed to state a claim upon which relief may be granted against Defendant McCoy. "[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [a] plaintiff, does not establish personal participation under § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). See Snyder v. Harris, 406 Fed. Appx. 313, 319, 2011 WL 9839, *5 (10th Cir. Jan. 4, 2011)(unpublished op.)(merely denying grievances is not personal participation supporting § 1983 allegation of deliberate indifference to serious medical needs). Plaintiff has not alleged that Defendant McCoy was responsible for medical treatment or medical scheduling decisions. Rather, his allegations against Defendant McCoy relate entirely to her denial of his grievances. Because Plaintiff has not alleged the personal participation of Defendant McCoy, Defendant McCoy's Motion to Dismiss should be granted pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

In this case, Plaintiff has named Defendants Jones, Suttmiller, and Carter as Defendants but the body of his Complaint contains no allegations whatsoever as to these

Defendants.[6] Because "[s]ection 1983 will not support a claim based on a *respondeat superior* theory of liability," Polk County v. Dodson, 454 U.S. 312, 325 (1981), personal participation is an essential element of a §1983 action seeking damages from a defendant in his or her individual capacity. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1993)(quotation omitted); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); Bennett v. Passic, 545 F.2d 1260, 1262-1263 (10th Cir. 1976). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). "It is not enough to establish that the official should have known of the risk of harm." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir.1998). To establish a § 1983 claim for damages against a supervisor, the plaintiff "must show that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997) (quotations omitted). Accord, Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988). Because Plaintiff has not alleged the personal participation of Defendants Jones,

---

[6]Plaintiff alleges in his responsive pleading that he submitted a Request to Staff form to Defendant Suttmiller and Defendant Garza on July 13, 2010, "asking who schedules [OUMC] follow-up appointments" but that Defendant Suttmiller did not respond to the request. Even assuming Plaintiff's Complaint was amended to include this allegation against Defendant Suttmiller, this allegation is not sufficient to allege the personal participation of Defendant Suttmiller in the alleged constitutional deprivations. Gallagher, 587 F.3d at 1069. Plaintiff asserts in an affidavit attached to his responsive pleading (Doc. # 51) that Defendant Carter "works with [Defendant] McCoy" and "was aware of Plaintiff's grievances about being delayed medical appointments for O.U. Medical Center and she fail [sic] to do her duties." Even assuming Plaintiff's Complaint was amended to include this allegation against Defendant Carter, this allegation is not sufficient to allege Defendant Carter's personal participation in the alleged constitutional deprivations. Id.

Suttmiller, and Carter, the Motion to Dismiss by Defendants Jones, Suttmiller, and Carter should be granted pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

V. Deliberate Indifference to Serious Medical Needs

Plaintiff contends in Count One and Count Three of the Complaint that Defendants Garza and Troutt violated his rights under the Eighth Amendment of the Constitution. These claims are governed by the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994), in which the court reiterated that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. Because prisoners have been "stripped ... of virtually every means of self-protection and ... their access to outside aid [has been foreclosed]," the Court reasoned that "the government and its officials are not free to let the state of nature take its course." Id. at 833.

With respect to the issue of medical care, the Eighth Amendment is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." Mata v. Saiz 427 F.3d 745, 751 (10th Cir. 2005). This standard is violated if the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Self v. Crum, 439 F.3d 1227, 1231 (10th Cir.)(quoting Farmer, 511 U.S. at 837), cert. denied, 549 U.S. 856 (2006). A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. The prisoner must show that, objectively, the inmate's

medical needs were "sufficiently serious," and, subjectively, the prison official acted with a "sufficiently culpable state of mind" such that the official knew of and disregarded an excessive risk to inmate health or safety. Id. at 1230-1231; see also Mata, 427 F.3d at 751.

A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation omitted). Defendants have not challenged Plaintiff's assertion that his urinary and kidney problems constitute a serious medical need.

Defendant Troutt relies on his own affidavit in support of his Motion to Dismiss or alternatively Motion for Summary Judgment. Plaintiff was advised of his obligations under Fed. R. Civ. P.56(c) and LCvR 56.1(c) in responding to Defendant Troutt's dispositive motion, and in responding to the motion Plaintiff has relied on materials outside of the pleadings. Therefore, the motion filed by Defendant Troutt will be considered a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.[7]

Plaintiff's Eighth Amendment claim against Defendants Garza and Troutt, as clarified in his responsive pleading, is that delays in transporting Plaintiff for medical treatment by specialists at OUMC constituted deliberate indifference to his serious medical needs.[8] An

---

[7]Unfortunately, neither Defendant Troutt nor Defendants Jones, Suttmiller, McCoy, and Carter provide a statement in their Motions of material facts that Defendants contend are not disputed, as required by LCvR 56.1(b). Plaintiff's responsive brief is deficient in the same respect.

[8]Plaintiff alleges in his responsive pleading that he "filed suit because of delay to his medical need[s]" by "not scheduling medical followup appointments" as ordered by his treating medical specialists at OUMC. Plaintiff's Response (Doc. # 51), at 1.  Plaintiff "is not accusing the

inmate who alleges that delayed medical treatment violates the inmate's Eighth Amendment rights must show

> (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, *e.g.*, a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration; [or] (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.*, a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell."

Self, 439 F.3d at 1232 (citations omitted). See Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000)("If ... the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.").

With respect to Plaintiff's claims against Defendant Troutt, Plaintiff alleges only one

---

Defendants of causing Plaintiff[']s urethrea [sic] stricture," but of "fail[ing] to reschedule Plaintiff's appointment[s] for the time specified by [OUMC] Urologist Doctor's orders . . . ." Id. at 3 (labeled Page 1-A). "Prison officials let Plaintiff[']s condition deteriorate by months and years of delay . . . . Plaintiff waited months and years [to be taken] to [OUMC] for his follow-up doctor's appointments." Id. at 7 (labeled Page 5-E).

instance in which Defendant Troutt treated him for his complaint of pain and swelling in his kidneys sometime after October 24, 2009, and only one instance in which Plaintiff submitted a Request to Staff to Defendant Troutt on January 2, 2007, concerning the failure of unidentified "OSR medical staff" to schedule Plaintiff for a return appointment with the OUMC urologist within 30 days, as ordered by the urologist on September 15, 2006. Plaintiff admits, however, that Defendant Garza "apologized [and] rescheduled the appointment with" OUMC and he was transported to OUMC for his appointment with a urologist on January 16, 2007. Because Plaintiff does not allege that Defendant Troutt was responsible for scheduling appointments with medial specialists outside of the prison or that Defendant Troutt denied medical treatment to Plaintiff or acted to delay medical treatment of Plaintiff for his urinary and kidney problems, Defendant Troutt's Motion for Summary Judgment with respect to Plaintiff's Eighth Amendment claims against him should be granted.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Motion to Dismiss (Doc. # 29) by Defendants Jones, Suttmiller, McCoy, and Carter be GRANTED and that Plaintiff's cause of action against these Defendants be DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. It is further recommended that the Motion to Dismiss (Doc. # 54) by Defendant Troutt be GRANTED with respect to Plaintiff's claims against Defendant Troutt in his official capacity and that the

Motion for Summary Judgment (Doc. # 54) by Defendant Troutt be GRANTED with respect to Plaintiff's Eighth Amendment claim against Defendant Troutt and that judgment issue in favor of Defendant Troutt and against Plaintiff.  Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by _____ November 21st , 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation partially disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this   1st   day of   November   , 2011.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE